IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYMAN N. WITCHER, # 352-048        *

Petitioner                          *

v                                   *   Civil Action Case No. WDQ-12-3085

WARDEN                              *

Respondent                          *
                                   ***

## MEMORANDUM

Pending is Wayman N. Witcher's ("Witcher") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (ECF 1, 3). Respondent John S. Wolfe, former Warden of the Jessup Correctional Institution, by his counsel, has filed a response, (ECF 8), to which Witcher has replied.[1] (ECF 12). After considering the pleadings, exhibits, and applicable law, the Court determines that a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011); Rule 8, "Rules Governing Section 2254 Proceedings in the United States District Courts."

## BACKGROUND

Witcher, *pro se*, is challenging his 2008 judgment of conviction after he was found guilty by a jury sitting in the Circuit Court for Wicomico County, Maryland, of child abuse and related offenses. The facts adduced at trial were set forth by the Court of Special Appeals of Maryland on direct appeal:

Heather Stillwell, Jalen's mother, testified that she left Jalen alone with

---

[1] Witcher is presently incarcerated at Eastern Correctional Institution. Kathleen Green is warden of that facility. Consequently, Kathleen Green is the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-47 (2004) (stating the writ should be directed to the "person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge."); *see also* 28 U.S.C. § 2243 (providing that any habeas petition must be directed at "the person having custody of the person detained'). Rule 2(a), Rules Governing Section ꞌ2254 Cases in the United States; 28 U.S.C. folio. ꞌ 2254; Fed. R. Civ. P. 25(d) (1).

1

appellant for the first time on the morning of August 24, 2007, while she ran some errands. On that date Jalen was 19 days old. She returned after a few hours and discovered that the left side of Jalen's head was red and swollen. She took Jalen to be examined by a medical doctor that afternoon. At the doctor's suggestion, she took Jalen to Peninsula Regional Medical Center ("PRMC"). Jalen was admitted to PRMC on August 24th and discharged two days later.

Because she had returned to her job as a waitress, Ms. Stillwell left Jalen with appellant for a second time on August 29, 2007. When she returned home on that date, she discovered Jalen had redness, bruising, and swelling of his head near his left ear, in the approximate location of his previous injury. Ms. Stillwell decided to take Jalen to the hospital again on August 29, 2007. Later that night, hospital personnel told Ms. Stillwell that Jalen had a skull fracture. The next morning, Jalen was flown to Johns Hopkins Hospital in Baltimore for further treatment.

Dr. Michell Goldstein, an attending physician in the Pediatric Emergency Department at Johns Hopkins Hospital, testified as an expert in pediatrics. He assessed Jalen's injuries on August 31, 2007, after reviewing Jalen's medical records from Johns Hopkins Hospital and PRMC. He also reviewed an x-ray and CAT scan performed at PRMC on August 29th; two CAT scans performed at Johns Hopkins Hospital on August 29th; and a CAT scan performed at Johns Hopkins Hospital on August 31st. Later he reviewed a CAT scan performed at PRMC on August 24th. He opined that Jalen's skull fracture was caused by blunt force trauma to the skull.

Ms. Stillwell was interviewed by Detective John Seichepine on August 29, 2007, at the Child Advocacy Center. At Detective Seichepine's request, Ms. Stillwell made two telephone calls to Mr. Witcher. Both calls were recorded. A compact disc ("CD") and a transcript of the conversations were subsequently prepared by Detective Seichepine. The CD was admitted into evidence as State's Exhibit 2A. The transcripts were marked for identification as State's Exhibits 2B and 2C and were distributed to the jurors so that they could follow along as they listened to the recording. Although the transcripts were not themselves admitted into evidence, they were made a part of the record sent to this Court.

There were several references in those telephone conversations by Mr. Witcher to his prior criminal record. These include the following statements by appellant:

- "But why would you jeopardize me though? Knowing the situation that I've already been in trouble and shit."

2

- "I'm the one with the record. You know what I mean? So who else they gonna pin it on, try and keep me as far out of it as possible."

- "Yea, but you gotta figure me, you looking at my record."

- "My mother fucking record and shit, they gotta pinpoint the shit on somebody you, that's what I'm trying to explain to you."

During the phone conversations with Ms. Stillwell, Witcher chastised Stillwell for telling police that she had left him alone with the baby. Witcher also encouraged Stillwell to lie to police and say that she tripped over her shoe string and dropped Jalen.

During the State's case, the prosecutor also introduced into evidence, over defense counsel's objection, a recording of a telephone conversation between Mr. Witcher and his wife, Michelle Basham. The call was made by Mr. Witcher from a pay phone in the Wicomico County Detention Center. Before the call was connected, a pre-recorded message advised both the caller and the recipient of the call that "this call is from a correctional institution and is subject to monitoring and recording." In the phone conversation, appellant asked his wife to listen to his story and "catch any inconsistencies." Witcher then relayed to her the story about Ms. Stillwell tripping and dropping the baby.

***********

The appellant called only one witness at trial, Dr. David Yousem, the Director of Neuro-Radiology at Johns Hopkins Hospital. Dr. Yousem was accepted as an expert in radiology. He testified that he reviewed Jalen's August 24th and August 29th CAT scans taken at PRMC. Dr. Yousem testified that, to a reasonable degree of medical certainty, both CAT scans indicated the presence of a skull fracture.

The jury found appellant guilty of first-degree child abuse, second-degree child abuse, first-degree assault, second-degree assault, and reckless endangerment arising from the events of August 24, 2007, but acquitted him of all counts charging him with the same offenses that were alleged to have occurred on August 29, 2007.

(ECF 8, Ex. 7, pp. 1-4). [2]

---

[2] All referenced exhibits were submitted by Respondent.

On July 22, 2008, the court sentenced Witcher to serve 25 years in prison for first-degree child abuse and merged the remaining offenses. *See* Ex 3, pp. 117-18.

Witcher appealed his conviction to the Court of Special Appeals, raising three questions: 1) whether the trial court erred in admitting evidence of Witcher's telephone call to his wife from the detention center; 2) whether the trial court erred in admitting evidence of Witcher's prior record; and 3) whether the trial court erred in refusing to instruct the jury that the State must prove every element of the crimes charged beyond a reasonable doubt. *See* Ex. 4-6. In an unreported opinion filed on May 21, 2010, the Court of Special Appeals rejected Witcher's claims and affirmed his convictions. *See* Ex. 7.

Witcher filed a Petition for Writ of Certiorari in the Court of Appeals of Maryland, seeking review of two issues: 1) whether the trial court erred in refusing to instruct the jury that the State must prove every element of the crimes charged beyond a reasonable doubt; and 2) whether the trial court erred in admitting evidence of Witcher's telephone call to his wife from the detention center. *See* Ex. 8. On August 23, 2010, the Court of Appeals denied review. *See* Ex. 9.

On August 25, 2010, Witcher filed a *pro se* Petition for Post-Conviction Relief in the Circuit Court for Wicomico County, which was later supplemented by counsel. *See* Ex. 10, 11. The Petition raised claims of ineffective assistance of trial counsel for: 1) failing to object to the prosecutor's improper closing argument; 2) failing to object to telephone testimony by a State's witness; 3) denying Witcher his right to testify; 4) failing to object to the trial court's failure to give a requested jury instruction; 5) failing to request a jury instruction on the intent element of first-degree assault; 6) failing to bring him to bench conferences; 7) failing to object to the use of medical records; 8) failing to object to the use of false testimony; 9) making statements adverse to his case; 10) failing to object to flight and concealment statements made by the prosecutor; and 11) failing to call a

4

material witness. *See* Ex. 10-13.

Witcher and his trial counsel, James Podlas, Esquire, testified at the post-conviction hearing on December 17, 2010. *See* Ex. 12. At the close of the hearing, the defense provided closing argument on only two issues: whether trial counsel was ineffective for (1) failing to object to the prosecutor's improper closing argument, and (2) failing to object to telephone testimony by a State's witness. *Id.* at 40-45. The State countered that Podlas had objected appropriately during the prosecutor's closing argument and that it was not unreasonable to allow a witness to testify by telephone given the circumstances of the case. *Id.* at 46. By opinion and order filed March 10, 2011, the Circuit Court denied post-conviction relief as to all grounds raised. *See* Exhibit 13.

Witcher, through counsel, filed an application for leave to appeal the denial of his post-conviction petition, asserting that trial counsel was ineffective for failing to object to, and agreeing to permit, a State's witness to testify via cellular phone. *See* Ex, 13. On October 3, 2012, Witcher's Application for Leave to Appeal was denied summarily by the Court of Special Appeals. The mandate issued on November 5, 2012. *See* Ex. 14.

## CLAIMS PRESENTED

Witcher is raising the following claims in this Petition for federal habeas corpus relief.

1) Trial counsel was ineffective for failing to object to: 1) the prosecutor's improper closing argument, and 2) telephone testimony by a State's witness; and

2) The trial court erred by: 1) admitting evidence of a telephone call made by Witcher to his wife from the Wicomico County Detention Center, and 2) refusing to instruct the jury that the State must prove every element of the crimes charged beyond a reasonable doubt.

(ECF 3).

## ANALYSIS

Witcher's claims will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254, which sets forth a "highly deferential standard for evaluating state-court

5

rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7(1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also White v. Woodhall,* 134 S. Ct. 1697, 1699 (2014), (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011)).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" analysis of 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559

U.S. 766, (2010) (quoting *Williams*, 529 U.S. at 411). "Rather, that application must be objectively unreasonable." *Id.* Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (internal quotation marks and citation omitted).

Further, under § 2254(d)(2) "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* (internal quotation marks and citation omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379 (quoting 28 U .S.C. § 2254(e)(1)).

I.   **Ineffective Assistance of Counsel Claims**

In order to establish ineffective assistance of counsel, it must be shown that 1) counsel's performance was deficient and 2) the performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below "an objective standard of reasonableness." *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687 (internal quotation marks and citation omitted). The standard for assessing competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689.

A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and the state appellate courts reviewing their performance. A defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington*, 131 S.Ct. at 790 (internal quotation marks and citation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

A showing of prejudice requires that 1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and 2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is not enough "to show that

the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *Harrington*, 131 S.Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697.

### A. Claim Trial Counsel was Ineffective for Failing to Object to the Prosecutor's Improper Closing Remarks

Witcher claims trial counsel rendered ineffective assistance by failing to object to the prosecutor's remark at closing arguments that Witcher "was given all the opportunity, all the opportunity to give his side to tell what really happened." (Ex 3, p. 91). Witcher argues this statement prejudiced him by unfairly shifting the burden of proof and violated his right against self-incrimination, and trial counsel's failure to object constituted ineffective assistance. (ECF 3).

#### 1. Procedural Default

Respondent posits this claim is procedurally defaulted because Witcher did not challenge the post-conviction court's rejection of this claim in his application for leave to appeal denial of post-conviction relief. (ECF 8, p. 21, Ex 10-14).

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276; *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41,

9

46–47 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show 1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or 2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Murray*, 477 U.S. at 495–96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (internal quotation marks omitted). "A finding of cause and prejudice does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted." *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012).

Witcher asserts that "in light of *Martinez v. Ryan*, [citation omitted] any position by Respondents that said Ground [sic] is procedurally barred is genuinely disputed on constitutional grounds." (ECF 12, p. 7). The Supreme Court held in *Martinez* that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. The instant case is unlike *Martinez* because Witcher's claim was in fact raised by counsel during post-conviction review, although its rejection was not challenged subsequently by way of an application for leave to appeal.

### 2. State Court Determination

Even if this claim were not procedurally barred, it provides no grounds for federal habeas corpus relief. The trial transcript reveals that defenses counsel twice objected to the State's closing

argument on the basis that it shifted the burden of proof, and, in light of these objections, the court provided a curative instruction to the jury that the defense had no burden whatsoever. Ex. 3 at 90-93; *see also* Exhibit 12 at 33-34 (trial counsel testifying that he had objected to the State's closing argument multiple times and the objections were precautionary because there was some foundation for the prosecutor's argument given the evidence admitted at trial). Given these facts, the state post-conviction court's determination that Witcher failed to show ineffective assistance was a reasonable application of clearly established Supreme Court precedent, and will not be disturbed under the highly deferential standard of review accorded to state court rulings.

### B. Claim Trial Counsel was Ineffective for Failing to Object to Telephone Testimony by a State's Witness

Witcher next claims trial counsel was deficient for agreeing to and then failing to object to State witness Donna Smith's testimony by cellular telephone. Witcher claims the absence of the witness' personal presence in the courtroom violated his rights under the Confrontation Clause, and counsel's failure to object amounted constitutionally ineffective representation. (ECF 3).

In rejecting this claim, the post-conviction court ruled:

> One of the State's witnesses, Donna Smith, was permitted to testify via telephone at trial. Petitioner alleges that her lack of presence in the courtroom violated his rights under the Confrontation Clause and that trial counsel's failure to object to such testimony was deficient and prejudicial.
>
> A defendant in a criminal trial has the right to be confronted with witnesses against him. Face-to-face confrontation meets the four elements of the Confrontation Clause namely, "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Md. v. Craig*, 497 U.S. 836 (1990). Additionally, an out-of-court declarant's testimonial hearsay statements are only admissible if the witness is unavailable and has been subject to previous cross-examination by the defendant. *Crawford v. Washington*, 541 U.S. 36 (2004). However, precedent has never "insisted on an actual face-to-face encounter at trial in every instance in which testimony is admitted against a defendant." *Craig, supra* at 847.

11

> Because Ms. Smith testified in court via telephone, her testimony was not hearsay, and the requirements of unavailability and previous cross-examination stated in *Crawford* do not apply. Although not physically present in the courtroom, she was placed under oath, and her testimony was subject to cross-examination. The jury could assess her credibility through her answers to counsels' questions, her vocal intonations, and any internal inconsistencies in her testimony. Additionally, while Mr. Podlas [defense counsel] did not object to her testimony by telephone, he did object to her testimony in general, stating that it was cumulative and irrelevant. (T2 p. 33.). Thus, his performance was not deficient and Petitioner's allegation is without merit.

Ex. 13, pp. 3-4.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witness against him." U.S. Const. Amend. VI. Before testimonial hearsay evidence may be admitted, regardless of the inherent trustworthiness of the statement, the Sixth Amendment requires that a witness be unavailable and that there be a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36 (2004). The Supreme Court explained that "testimonial" includes "at a minimum, prior testimony at a preliminary hearing, before a grand jury, or at a former trial; or to police interrogations." *Id.*, 541 U.S. at 68.

Defense counsel testified at the post-conviction hearing that allowing Smith to testify by phone was a strategic decision because he believed the trial court would have delayed the trial by several hours to allow Smith to testify in court, and in any event the testimony was cumulative and irrelevant. Ex 3, p. 32, 40-41, Ex. 12 pp. 31-33, 36-38.[3] Witcher has not overcome the presumption that, under the circumstances, defense counsel's actions may be considered sound trial strategy. *Strickland*, 466 U.S. at 688, 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). When given the opportunity to conduct cross-examination of the witness, defense counsel chose not to ask the witness any questions. Ex. 12 p. 47.

---

[3] Defense counsel told the post-conviction court that Smith was the last State witness. Ex. 12. p. 32.

The state court's determination was not "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under the circumstances, Witcher is not entitled to federal habeas relief.

## II. Claims of Trial Court Error

### A. Admission of Telephone Call Recording

Witcher asserts the trial court erred by admitting evidence of a telephone call he made to his wife from the Wicomico County Detention Center. At trial, Witcher objected to the evidence on two grounds: 1) the recording as was obtained in violation of the Maryland Wiretap Act;[4] and 2) the conversation was privileged martial communication and thus inadmissible.

As Witcher's Petition premises his claims on state law, they are not cognizable on federal habeas review. (ECF 3, pp. 20-24). In habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Cagle v. Branker*, 520 F.3d 320, 324 (2008). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 480. In his reply, Witcher argued that the Maryland Wiretap Act is modeled after the federal wiretapping statute at 28 U.S.C. § 2510 *et seq. See Smith v. State*, 283 Md. 156, 161 n. 2 (1978), and the federal statute generally prohibits unauthorized interception of "any wire, oral, or electronic communication." ECF 12, p. 16.

Even if the claims were cognizable, Witcher does not satisfy the standard of review set forth in 28 U.S.C. § 2254. In rejecting this claim on direct appeal, the Court of Special Appeals of

---

[4] The Maryland Wiretapping and Electronic Surveillance Act is set forth in Courts and Judicial Proceedings Article (2006), §§ 10-461 *et seq.*

13

Maryland noted that Witcher and his wife heard a recorded message on the phone prior to their conversation which stated the call was "from a correctional institution and subject to monitoring and recording." (ECF 7, p. 5). The Court of Special Appeals stated:

> The [Maryland Wiretap] Act is modeled after federal legislation set forth in, 18 USC §§ 2510, *et seq. See Smith v. State*, 283 Md. 156, 161 n.2 (1978). A number of cases involving 18 USC §§ 2510 *et seq.* have concluded that the decision to engage in a conversation after being told that the conversation was "subject to monitoring and recording" is sufficient to establish that the caller consented to the recording. *See United States v. Verdin-Garcia*, 516 F.3d 884, 894-95 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 161 (2008) (prisoner's "consent can be implied from his decision to use the prison telephone despite adequate warnings that doing so would subject his communications to monitoring"); *United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004) (if prisoner is aware that calls are recorded, but "nevertheless uses the telephone, by that use he impliedly consents to be monitored ..") (quoting *United States v. Workman*, F.3d 688, 693 (2d Cir. 1996)) (same); *United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002) (prison inmate consented to interception where he was required to permit monitoring as condition of using prison telephones).
>
> ****************
>
> Communications between husband and wife occurring during the marriage are deemed confidential if expressly made so, or if the subject is such that the communicating spouse would probably desire that the matter be kept secret, either because its disclosure would be embarrassing or for some other reason." *Coleman v. State*, 281 Md. 538, 542, 380 A.2d 49 (1977) (citation omitted). In *State v. Enriquez*, 327 Md. 365, 372, 609 A.2d 343 (1992), the Court said that "there is a rebuttable presumption that marital communications are confidential and privileged." *See State v. Mazzone*, 336 Md. 379, 384, 648 A.2d 978 (1994). But, that "presumption is rebutted ... where it is shown that the communication was not intended to be confidential." *Enriquez*, 327 Md. at 372 (citation omitted). Moreover, appellant had the burden of establishing "the element of confidentiality...." *Ashford*, 147 Md. App. at 69.
>
> When "<u>the communication is made with the contemplation or expectation that a third party will learn of it, the confidential communication privilege does not apply</u>." *Matthews v. State*, 89 Md. App. 488, 502, 598 A.2d 813 (1991) (citation omitted).

ECF 7, p. 4-7 (emphasis in original) (internal quotation omitted).

14

The Court of Special Appeals concluded that by electing to continue the telephone call after the recorded warning, both Witcher and his wife gave implied consent to the recording. *Id.* Neither Witcher nor his wife had any expectation of privacy. Further, the conversation was not privileged because both parties were noticed that the phone call could be recorded and reviewed. Thus, the Court of Special Appeals determined that admission of the phone conversation between Witcher and his wife was not trial court error. *Id.* at 8.

The state court's ruling will not be disturbed as the court's rejection of Witcher's claims did not result in a decision that violated established Supreme Court precedent, nor is the decision susceptible to federal habeas relief because there was no unreasonable application of the facts. 28 U.S.C. § 2254(d)(1) and (d)(2). In sum, Witcher's claim of trial court error for admitting evidence of the telephone call provides no basis to warrant federal habeas relief.

### B. Jury Instructions

Lastly, Witcher claims the trial court erred by refusing to instruct the jury that the State must prove each element of the crimes charged beyond a reasonable doubt. After the jury was instructed, defense counsel asked the trial court to "make the jury aware that the duty to find beyond a reasonable doubt applies to each and every element of the crime or the allegation." Ex. 3, p. 72. In denying the request, the trial court observed the same concept had been fairly covered in the instructions. *Id.* at 73.

Witcher argues here, as he did on direct appeal, that because nothing in the instructions told jurors that the beyond the reasonable doubt standard applied to each element of the crimes charged, a reasonable juror may have found Witcher guilty without considering whether the evidence established each element of the crimes charged beyond a reasonable doubt. (ECF 3, pp. 22-24 and 12, pp. 26-30; *see also* Ex 3, pp. 65-66, 72).

The Court of Special Appeals denied this claim, noting the jury was instructed in exact compliance with the Maryland Pattern Jury Instructions (MPJI) CR 2:02. (ECF 7, p. 12). In its opinion, the state court quoted the MPJI, which states:

> The defendant is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove [his] [her] innocence. However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.
>
> A reasonable doubt is a doubt founded upon reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs.
>
> However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

Ex. 7, pp. 12-13. The Court of Special Appeals continued:

> According to appellant, "[w]hile the instructions given in this case correctly informed the jurors of the State's burden to prove guilt beyond a reasonable doubt and of the elements of the crimes charged, they do not put a reasonable juror on notice that the State must prove each one of those elements beyond a reasonable doubt and, therefore, do not fairly cover the requested instruction."
>
> Each of the charges that appellant faced had several elements. As a matter of logic, it would have been impossible to find appellant guilty beyond a reasonable doubt of any crime that required proof of more than one element if a jury had reasonable doubt as to whether one of those elements has been adequately proven. Stated differently, a reasonable doubt as to one element of a crime by necessity would infect the whole and, based on the instruction actually given, the jury would have been aware of that fact. We therefore hold that the requested instruction was fairly covered by MPJI Cr-2:02.3

16

Ex. 7, p. 14. [footnote omitted].

Habeas review of jury instructions is limited to a determination whether the resulting conviction violated due process. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1997) (state jury instruction must render entire trial fundamentally unfair to warrant habeas relief). Although the Constitution requires that the prosecution prove every element of an offense beyond a reasonable doubt, it "does not require that any particular form of words be used in advising the jury of the government's burden of proof." A jury instruction on reasonable doubt meets constitutional scrutiny if it does not create a reasonable probability that the jury applied a standard of guilt below that which is required by the Due Process Clause. *Victor v. Nebraska*, 511 U.S. 1, 5–6 (1994).

In *Estelle v. McGuire*, 502 U.S. at 71–72, the Supreme Court ruled that the correctness of state pattern jury instructions does not present a federal question. A violation of state law which does not infringe upon a specific constitutional right is not cognizable on federal habeas review unless it amounts to "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir.1978) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The Court of Special Appeals noted the law does not require any particular form of reasonable doubt instruction. Further, a reasonable doubt as to one element of a crime by necessity would have infected the whole, and under the instruction provided, the jury would have been made aware of that fact. The ruling on the jury instructions did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. Consequently, the claim provides no grounds for habeas relief.

## CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.' " *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has failed to make a substantial showing he was denied a constitutional right, and this Court finds that reasonable jurists would not find the denial of habeas relief in this case debatable. Therefore, a Certificate of Appealability shall not issue.

## CONCLUSION

For the foregoing reasons, the Court concludes the Petition provides no grounds for habeas corpus relief. A separate Order follows denying the Petition and declining to issue a Certificate of Appealability.

_11/17/14_
Date

_/s/ William D. Quarles, Jr._
William D. Quarles, Jr.
United States District Judge